## PROTECTION OF THE INTERESTS OF ALL IN FIXING FEES.

Superior Court of Cincinnati.

JOSEPH BUSCHLE v. THE BUSCHLE MANUFACTURING COMPANY.

Decided, February 11, 1913.

*Fees in Receiverships—Allowance of, to an Attorney Will be Determined Upon the Merits of His Claim—Notwithstanding Esprit de Corps Prevents Counsel From Objecting to an Allowance.*

Fees will not be allowed to plaintiff's counsel out of a fund in the possession of the court unless plaintiff or his counsel have rendered services the effect of which is to conserve or add to such fund. Where plaintiff himself has participated in acts which have diminished that fund no fee will be allowed his counsel therefrom.

*L. H. Pummill,* for the motion.
*Burch, Peters & Connolly,* contra.

OPPENHEIMER, J.

This case comes on now to be heard upon a motion filed by L. H. Pummill, counsel for plaintiff, for fees "for his services in the preparation, bringing and trying the above cause from its inception until the receiver was appointed herein."

It is always somewhat awkward to determine applications for the allowance of fees in receivership cases. We believe that we are justified in taking judicial notice of the fact that there is a certain *esprit de corps* among attorneys which prevents them from interposing objections to the allowance of fees. Accordingly in this case, counsel for the receiver have stated that they are not opposing the application. But it is the duty of the court to protect the interest of all parties involved, and to see to it that the funds which should be available for distribution among creditors are not paid out to those who have neither equitable nor legal right to them. The court must do justice, not merely to

attorneys, but as well to others who must look to it for its protection but who have not the same opportunities for presenting their claims.

The petition in this case was instituted on behalf of the plaintiff as stockholder in the defendant corporation.  He alleged that certain parties had improperly persuaded him to turn over his business to a corporation to be organized by them; that defendant corporation was accordingly formed under the laws of the state of Ohio with a capital stock of $100,000, and that he thereupon turned over his business to said corporation in return for $40,000 of the capital stock.  He further stated that all the proceedings of the corporation thereafter were unlawful; that the requirements of the statutes with reference to meetings and the keeping of minute books and similar details were disregarded; that his associates upon the board of directors were fraudulently dissipating the assets of the corporation, and conspiring to ruin the business; that the corporation had failed in the object of its creation, and that it was insolvent.  Plaintiff therefore prayed that the alleged board of directors and officers be enjoined from managing and controlling the business and that a receiver be appointed.

Upon the trial of the case plaintiff totally failed to sustain any of the allegations of his petition except that the corporation was insolvent.  It appeared that the incorporation of this company was a rather remarkable exhibition of "high finance."  The total assets of the business consisted of machinery and stock in trade, valued conservatively at five or six thousand dollars, and a valueless formula for the making of ten-pins.  Yet $40,000 in capital stock was issued to plaintiff in return for these physical assets, and $40,000 in stock to H. J. Scheid for the valueless formula which could never be used.  The alleged dissipation of assets consisted in the execution of a note for $3,000 to Orville K. Jones for alleged legal services; but no fraud was shown in connection with this transaction and plaintiff himself signed the note.  Nor did there appear to be anything irregular in the organization of the corporation or the conduct of its affairs,

except that the physical assets of the corporation were entirely submerged in the water which composed most of the stock. As heretofore stated, this left no allegation proved, except that the corporation was insolvent, and mere insolvency is not a sufficient ground for the appointment of a receiver. General Code, Section 11894; *Building Company* v. *Rehn*, 6 N. P., 185; *Fruit Company* v. *Dox*, 4 N.P.(N.S.), 155; *DeLacroix* v. *Steel Company*, 8 N.P.(N.S.), 489; *Bank* v. *Lakeside Co.*, 19 C. C., 365.

However, at the conclusion of the hearing it was admitted by all parties that the corporation was actually insolvent, and a number of the creditors who were represented joined in a request that the court appoint a receiver for the purpose of conserving the assets. This request was concurred in by all the stockholders, including plaintiff, and a receiver was thereupon appointed.

It is undoubtedly the rule that where an attorney brings into court a fund which he has assisted in creating or conserving for the benefit of creditors, or to which his labors or those of his client have added, he is entitled to a fee to be paid out of such fund, but we can not see how plaintiff's counsel in this case is justified in claiming the benefit of this principle. So far as his petition is concerned, he failed utterly in sustaining those allegations which were necessary to give the court jurisdiction. Moreover, it appeared that his client himself had contributed largely toward bringing about the condition which was apparent. It is therefore our opinion that instead of assisting in conserving the assets for creditors, plaintiff himself had rather assisted in dissipating the assets, and it was only the united request of those who stood practically in the position of defendants which brought the fund into court and prevented further loss.

We are therefore of the opinion that counsel will have to look to his own client for fees, and that it would be unconscionable for us further to diminish the fund available for the creditors by paying any portion of it to the applicant.

A number of cases have been cited to us but we do not believe that any of them shed any light upon the case at bar.